STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **T.Y., A.Y.-1, A.Y.-2, J.P., K.P., and A.P.**

**No. 17-0441** (Kanawha County 16-JA-18, 16-JA-19, 16-JA-20, 16-JA-21, 16-JA-22, & 16-JA-23)


**MEMORANDUM DECISION**

Petitioner Mother M.P., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's April 11, 2017, order terminating her parental rights to T.Y., A.Y.-1, A.Y.-2, J.P., K.P., and A.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), W. Jesse Forbes, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2016, the DHHR filed an abuse and neglect petition against petitioner.[2] According to the petition, the DHHR received a referral that petitioner abandoned three of the children, T.Y., A.Y.-1, and A.Y.-2, by dropping them off at her sister-in-law's place of employment and failing to return for them. Petitioner advised the sister-in-law, R.K., that she wanted her to keep the children and enroll them in school. Petitioner provided nothing for the children and did not send any clothing. R.K. informed petitioner that she did not have the means to care for the children. Petitioner then stated that she would return to retrieve the children the next day. However, petitioner never returned. Rather, she requested that R.K. provide her with food and money for a hotel room so that she and the other three children did not have to sleep in her car. The DHHR alleged that the children refused to talk to Child Protective Services ("CPS")

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two children share the same initials, we will refer to them as A.Y.-1 and A.Y.-2, respectively, throughout this memorandum decision.

[2]When the DHHR filed its petition, the children's fathers were deceased.

1

workers because they had been in and out of several foster homes. The children had not been enrolled in school for the preceding two months. The DHHR further alleged that petitioner failed to cooperate, told R.K. that she was going to flee the area, and threatened to kill the potential foster parents. Specifically, petitioner stated "that she had already killed her husband and framed someone else for it." Petitioner had a long history of CPS involvement in at least two different states. Petitioner was the subject of proceedings in Indiana, beginning in 2004, for abandonment. The children were returned to her care in 2005, but were subsequently removed again in 2006 in Roane County, West Virginia. Petitioner regained custody of the children in 2008. In 2011, in Fayette County, West Virginia, the children were removed from petitioner's custody due to her failure to protect the children from her boyfriend, who allegedly sexually abused A.Y.-1. The children were returned to her after she completed an improvement period. Finally, the DHHR alleged that petitioner (1) had been provided services to no avail; (2) failed to provide a safe home and life essentials to the children; (3) neglected the children's education; (4) demonstrated a violent nature, anger management issues, substance abuse, and a history of failure to protect her children, all of which prevented her from being an appropriate parent; (5) abandoned the children; and (6) had a significant history of involvement with CPS which included a hostile attitude, a history of fleeing, and lack of cooperation.

The circuit court held a preliminary hearing in which the DHHR presented the testimony of petitioner, R.K., and a CPS worker. Petitioner testified that she recently moved to West Virginia from Indiana, where she claimed she was not being investigated by CPS. However, she then stated that her involvement with Indiana CPS was "a 30-day open case," which was set to expire on January 15, 2016, after she left the area with the children. Petitioner denied threatening to kill the foster family. Petitioner also denied that R.K. ever asked her to retrieve the children. Petitioner denied knowing about the sexual abuse from her previous case, stating that the children never told her and that the former judge called two of her children "habitual pathological liars." Petitioner also lied under oath. During the course of the hearing, petitioner stated that she was not married. However, the DHHR then presented evidence that petitioner was married. When questioned whether she had lied under oath, petitioner responded "[y]es." R.K. testified that the children missed petitioner but did not want to return to her care. Specifically, A.Y.-1 reported that she was scared of petitioner, having previously been pushed down the stairs for reporting petitioner's drug use. Finally, a CPS worker testified that petitioner denied all allegations against her, including substance abuse and abandonment. The CPS worker testified that she spoke to all of the children and that they appeared to be afraid of petitioner. Two of the children told the CPS worker that they slept in petitioner's car and had not eaten in several days. Based upon the testimony, the circuit court found there was probable cause that petitioner abused, neglected, and abandoned the children. The circuit court also found that there was probable cause to remove the children from petitioner's legal and physical custody.

In May of 2016, petitioner underwent a psychological evaluation performed by Saar Psychological Group, PLLC. The evaluating psychologist concluded that petitioner "does not have any cognitive limitations that would impair her ability to parent." The psychologist opined that petitioner's history was indicative of life-long maladaptive personality traits that have interfered and continue to interfere with her ability to parent. The psychologist further stated that it was unlikely that petitioner would benefit from further services and offered no recommendations.

In September of 2016, the circuit court held an adjudicatory hearing during which the DHHR requested that all prior evidence submitted be considered for adjudicatory purposes. The request was granted without objection and no further evidence was submitted. The circuit court then adjudicated petitioner as an abusing parent due to her (1) failure to provide a safe home and life essentials; (2) neglect of the children's educational needs; (3) mental state, violent nature, anger management issues, and substance abuse issues which prevented her from being an appropriate parent; (4) physical and substance abuse; and (5) lack of cooperation throughout her substantial history of CPS involvement, among other things.[3]

In January of 2017, the circuit court held a dispositional hearing, during which petitioner moved for an improvement period. The DHHR presented the testimony of a CPS worker who testified that petitioner failed to comply with the services provided. Specifically, the circuit court heard evidence that petitioner stopped submitting to drug screens, missed multiple parenting and adult life classes, and cancelled her supervised visitation due to leaving the state unannounced for approximately one month. In fact, the CPS worker testified that petitioner continued to miss drug screens after November of 2016, despite having the services set up to be performed in her home. Further, petitioner had yet to obtain a steady income or suitable housing. Petitioner testified on her own behalf and admitted that the DHHR previously granted her services in all of her former proceedings, including the instant proceedings. Petitioner further testified that she never abused her children, failed to feed them, or abandoned them. The circuit court found that petitioner lacked the necessary motivation to regain custody of her children and that, despite the many opportunities provided to her through services, she failed to correct the conditions of abuse and neglect. Ultimately, the circuit court denied petitioner's motion for an additional improvement period and terminated her parental rights to the children.[4] It is from the April 11, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[3]While the parties refer to petitioner as "an abusive and neglectful parent," we note that the phrase "neglectful parent" does not appear in the statutory framework for abuse and neglect proceedings in this State. Instead, West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse *or neglect* as alleged in the petition charging child abuse *or neglect*." (Emphasis added.) As such, the Court will refer to petitioner as an "abusing parent" in this memorandum decision, as that phrase encompasses parents who have been adjudicated of abuse and/or neglect.

[4]According to the DHHR, seventeen-year-old T.Y. ran away from her foster home and is still missing. A permanency plan will be implemented upon her return. J.P., K.P., and A.P. are with Pressley Ridge Foster Home with the goal to be adopted through that agency. A.Y.-1 was placed in the home of an aunt with the goal of adoption. A.Y.-2 was placed in a foster home with the goal of adoption.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner asserts two assignments of error. First, she argues that the circuit court erred in denying her motion for an improvement period. We disagree. First, the Court finds no error in the circuit court's denial of petitioner's motion for an improvement period. Pursuant to West Virginia Code § 49-4-610, "[a] court may grant a respondent an improvement period . . . when . . . the respondent files a written motion . . . [and] demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period[.]" The record on appeal is devoid of any such written motion. Moreover, the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, even if petitioner had filed a written motion, it is clear from the record that she failed to demonstrate her ability to fully participate in an improvement period. Contrary to petitioner's argument that she substantially complied with the services the DHHR offered, the record shows that she failed to submit to drug screens and missed individual parenting and adult life skills classes. In fact, petitioner received services throughout four separate cases dating back to 2004 and yet continues to conduct herself in the same abusive manner. We have previously held that it is possible for an individual to show "compliance with specific aspects of the case plan" while failing "to improve . . . [the] overall attitude and approach to parenting." *W.Va. Dep't of Human Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990). Fully participating in an improvement period necessarily requires implementing the parenting skills that are being taught through services. *In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015). Thus, while petitioner completed past improvement periods, and took advantage of a few services offered throughout the entirety of the instant proceedings, the record clearly indicates that she failed to implement any of the techniques taught in the services and has not adopted a new approach to parenting. Accordingly, we find no error in the circuit court's decision denying petitioner an improvement period.

Petitioner also argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" Moreover, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Despite being offered services in four separate cases dating back over ten years, petitioner failed to respond or follow through with rehabilitative efforts. Further, the evaluating psychologist opined that petitioner's prognosis for improved parenting was extremely poor to non-existent and declined to recommend services as she seemed unlikely to benefit. Based on the evidence outlined above, it is clear that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination was necessary for the children's welfare. As such, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 11, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: October 23, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

5